IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Lee Mellinger,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Warden Graber,<br><br>　　　　Respondent. | No. CV-14-01806-PHX-DGC (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On August 14, 2014, Petitioner Daniel Lee Mellinger, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), Phoenix, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2241, raising one issue, that the United States Parole Commission ("USPC") does not have jurisdiction over Petitioner, and therefore he is illegally incarcerated. (Doc. 1, at 4.) Respondent filed an Answer on January 20, 2015. (Doc. 22.) Petitioner filed a Response to Respondent's Answer, which he titled Supplemental Response to the Government's Late Answer, on January 29, 2015. (Doc. 24.) Petitioner also filed, on February 20, 2015, a "Motion for Summary Judgement Per Rule 56(c)," raising the same issue, and also responding to some of the arguments made by Respondent in his Answer. (Doc. 26.) On March 23, 2015, Respondent filed a Response to Petitioner's Motion for Summary Judgment. (Doc. 27.) On April 9, 2015, Petitioner filed his Reply to Respondent's Answer, which he

titled "Objections to Respondent's Reply." (Doc. 18.) Petitioner also filed a Motion to Rule and Allow Appeal. (Doc. 29.) Respondent filed a Response. (Doc. 30.)

## BACKGROUND

On September 30, 1985, Petitioner was sentenced by the United States District Court for the Central District of California to an 18-year aggregate term of imprisonment for bank robberies committed between February 4 and March 4, 1985. (Doc. 17, Exh.[1] 1, at 6-8; Exhs. 2, 22.) On January 30, 1988, Petitioner was committed on his federal sentences, and, at the time, had zero "jail credit" days. (Exh. 1, at 9, 14.) On January 24, 1989, the USPC ordered that Petitioner serve to the expiration of his sentence, i.e., that he serve until required to be released pursuant to 18 U.S.C. §4163 "as if on parole" on his full term date (less accumulated good time credits.) (Id.; Exh. 3.)

On Aril 18, 1997, Petitioner was given a mandatory release pursuant to 28 U.S.C. §4163, requiring him to remain under the jurisdiction of the USPC "as if on parole" until November 27, 2003. (Exh. 6.) He had served approximately 110 months of his original sentence, and had 2593 days left to serve. (Exh. 1, at 9-14; Exh. 6.) Petitioner's parole guideline range by the time he was released was 112-182 months. (Exhs. 4, 5.) Thus, Petitioner's mandatory release came before the low end of his parole guidelines.

On March 23, 1998, the USPC revoked Petitioner's mandatory release for leaving the district of supervision without permission. (Exh. 7.) The USPC credited him with time spent on supervision, and ordered that he serve 12 months prior to reparole (on a guideline range of 12-16 months). (Id.) On February 9, 1999, Petitioner was reparoled, to remain under supervision until May 25, 2004. (Exh. 8.)

On June 13, 1999, Petitioner was arrested on new criminal charges for armed bank robbery. (See, U.S. District Court, Northern District of California, Case No. CR 99-20101-01-RMW, Presentence Report, paragraph 11.) On July 13, 1999, the USPC issued a warrant for again leaving the district of supervision without permission as well as failure to report a

---

[1]Hereinafter, all exhibits referenced are attached to Respondent's Response, Doc. 22.

1 change in residence. (Exhs. 9, 10.) The USPC instructed the United States Marshals Service to assume custody of Petitioner when found, but that if he was already in custody, to place the USPC's warrant as a detainer. (Exh. 11.)

4 On January 28, 2000, Petitioner was sentenced to 188 months' imprisonment for armed bank robbery. (Exhs. 12; 1, at 1.) On March 7, 2002, Petitioner was sentenced to 30 months (consecutive) for possession of a prohibited object by an inmate. (Exh. 1, at 1-2.) Petitioner's 2000 and 2002 sentences were imposed pursuant to the Sentence Reform Act and therefore were not eligible for parole. The USPC's 1999 warrant was placed as a detainer and on May 15, 2007, the USPC supplemented its warrant with a charge of armed bank robbery. (Exh. 15.) On October 5, 2007, the USPC undertook a dispositional review of the detainer and ordered that it stand. (Exhs. 13, 14.)

12 In May, 2014, the USPC was informed that Petitioner's release date from his new sentences was July 18, 2014. (Exh. 16.) The USPC's warrant was executed on that date. (Exh. 17.) On August 5, 2014, the USPC again supplemented its warrant with the charge of possession of a prohibited object by an inmate. (Exh. 18.) On November 13, 2014, Petitioner received a parole revocation hearing. (Exh. 19.) On December 3, 2014, the USPC issued a Notice of Action revoking Petitioner's parole, and ordered: "None of the time spent on parole shall be credited. Continue to Expiration." (Exh. 20.) Although the USPC's decision may be administratively appealed, Respondent asserts that Petitioner has not filed an filed an administrative appeal, and Petitioner in his Reply does not establish otherwise.

21 The current computation of Petitioner's sentence by the Federal Bureau of Prisons shows Petitioner's expected mandatory release date as January 27, 2018, and the 180 day period in which he will be supervised as a mandatory release pursuant to 18 U.S.C. §4164, will end on May 5, 2019. (Exh. 21, at 2.)

25 \\\
26 \\\
27 \\\

**HABEAS PETITION**

Petitioner claims that the USPC does not have jurisdiction over him, and states the following facts in support of his claim:

> The USPC was legislated out of existence by Congress with the SRA of 1984. The crimes I'm in custody for all occured in 1985. The USPC had until Nov 1, 1992 to give everyone dates. Then cease to exist. I was in custody past Nov 1, 1992 and released on April 18, 1997. Under this law, I was under supervision of the District Court. They have never filed a warrant and my sentence expired under its full 18 year term in 2003 or 2004. This current USPC got an extension by Congress in 1987 after my crimes. Under the laws in effect at the time I committed my crimes I would now be a free man under the amended statutes they have authority over me, except the US Constitution forbids it. Ex Post Facto. The fact is anyone who committed their crimes after Oct. 12, 1984 and before Dec. 7, 1987, and still in custody past Nov 1, 1992 are not under the USPC. There is no lawful authority keeping me incarcerated.

(Doc. 1, at 4.)

**ANALYSIS**

The Sentencing Reform Act of 1984 ("SRA"), 18 U.S.C. 3551 *et seq.*, at Section 218(a)(5), 98 Stat. 2027, abolished the U.S. Parole Commission. The USPC was kept in existence however, for a period of 5 years after the effective date of the SRA to process the cases of defendants convicted of crimes committed before the effective date of the Act who would still be incarcerated on or after that date, and required the USPC to set release dates within the applicable parole guideline range for those still incarcerated after the 5-year winding-down period. See, Section 235(b)(1)(a). That Section has continually been amended to extend this five-year savings provision, and the USPC and parole statutes are currently set to expire on October 31, 2018, due to several statutory amendments extending the five-year period. Walden v. U.S. Parole Comm'n, 114 F.3d 1136, 1138 (11th Cir. 1997) ("The [USPC] and all laws relating to parole in existence on October 31, 1987, therefore, were to continue in effect until November 1, 1992.") (citation omitted); United States Parole Extension Act of 2013, Pub. L. No. 113-47, 125 Stat. 572 (October 30, 2013) (extending the savings provision for 31 years from November 1, 1987).

At the time that Petitioner committed his offenses, in 1985, the USPC could exceed the applicable parole guidelines when setting parole for a federal prisoner. See, 18 U.S.C. §4206(c) (as it then existed). Section 235(b)(3) of the SRA, however, provided that:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline.

That provision eliminated the right of the USPC to exceed the applicable parole guideline range in setting a release date. This Section of the SRA went into effect on November 1, 1987, along with the SRA. Evenstad v. United States, 978 F.2d 1154, 1158 (9th Cir. 1992); Fassler v. U.S. Parole Comm'n, 964 F.2d 877, 879 (9th Cir. 1991); Tripati v. U.S. Parole Comm'n, 872 F.2d 328, 330 (9th Cir. 1989) (*per curiam*); accord, Bledsoe v. United States, 384 F.3d 1232, 1233 n. 1 (10th Cir. 2004); Colemen v. Honsted, 908 F.2d 906, 908 (11th Cir. 1990); Lightsey v. Kastner, 846 F.2d 329, 331-32 (5th Cir. 1988); Hackett v. U.S. Parole Comm'n, 851 F.2d 127, 132 (6th Cir. 1987) (*per curam*); Romano v. Luther, 816 F.2d 832, 837-39 (2nd Cir. 1987). Petitioner cites Von Kahl v. United States, 321 Fed.Appx. 724, 2009 WL 799024 (10th Cir. 2009) (unpublished), in support of his contention that Section 235(b)(3) of the SRA took effect on October 12, 1984, not November 1, 1987. (Doc. 28, at 2.) He is mistaken. The Court in Von Kahl held to the contrary:

> Our prior cases hold that the five-year period [set forth in Section 235(b)(3)] began to run on November 1, 1987, the effective date of the SRA, rather than October 12, 1984, the date the CCCA was enacted. *See Bledsoe*, 384 F.3d at 1233 n. 1; *Lewis*, 880 F.2d at 290. [fn 5] Though petitioners urge us to do so, we cannot overrule the prior panel decision in *Bledsoe*.

Petitioner also cites Dallis v. Martin, 929 F.2d 587 (10th Cir. 1991), in support of his position. (Doc. 28, at 2.) As stated by the Court in Von Kahl, "[a]ny statement to the contrary in *Dallis v. Martin*, [] was dicta and was not binding on the panel in *Bledsoe*." Von Kahl, 321 Fed.Appx. at 730 n. 5 (also recognizing concurrence of Second Circuit that effective date was November 1, 1987). Petitioner cites Lyons v. Mendez, 303 F.3d 285 (3rd Cir. 2002), and Hackley v. Bledsoe, 350 Fed.Appx. 599, 2009 WL 3471092 (3rd Cir. 2009) (unpublished), Third Circuit opinions in support of his assertion that Section 235(c)(3) or the SRA went into effect in October 1984, and thus, before he committed his crimes. Petitioner ignores the fact that this holding is contrary to the law of this Circuit, and several other Circuits, as noted above.

- 5 -

1  To the extent that Petitioner argues that the USPC ceased to exist in 1989 because the five-year savings provision ran from 1984, his argument fails. Because Section 235(b)(3) was effective on November 1, 1987, the first sunset occurred in 1992, and Congress extended that date, in 1990, by five-years. See, Section 315 of the Judicial Improvements Act of 1990. Pub. L. 101-650, 104 Stat. 5115. Thus, there is no "window" when the USPC ceased to exist.

On December 7, 1987, just five weeks after the effective date of Section 235(b)(3), which restricted the USPC from sentencing persons in custody at the time of the USPC dissolution outside the parole guideline range, it was amended to delete the change effected by the original version of Section 235(b)(3) and reverted to the earlier authority of the USPC to set a release date outside the applicable parole guideline range. Evenstad, 978 F.2d at 1158; Fassler, 964 F.2d at 879. The amended provision read as follows:

> The United States parole Commission shall set a release date, for an individual who will be in its jurisdiction on the day before the expiration of ten years after the effective date of this Act, pursuant to section 4206 of title 18, United States Code. A release set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of ten years following the effective date of this Act.

Petitioner's argument that the USPC was prohibited from sentencing him outside his parole guideline range in 1997, based upon un-amended 235(b)(3) is without merit. The Ninth Circuit Court of Appeals has made clear that, for federal prisoners whose offenses and convictions predated November 1, 1987, the SRA's enactment of the original version of Section 235(b)(3) was a non-event, because the provision never applied to them. See, Tripati, 872 F.2d at 330 (Section 235(b)(3) of the SRA specifically kept the parole setting provision of 18 U.S.C. 4206(c) in effect until October 31, 1992, for persons [] who were convicted prior to November 1, 1987); Skowronek v. Brennen, 896 F.2d 264 (7th Cir. 1990). See also, Hackley v. Bledsoe, 350 Fed.Appx. 599, 2009 WL 3471-92 (3rd Cir. 1999) (unpublished) (the USPC has "never had to apply 235(b)(3), because the commencement of the winding up process has been continuously post-poned by Congress"); accord, Von Kahl, 321 Fed.Appx. at 730 ("it would be absurd to read the 1987 amendment to 235(b)(3) as

- 6 -

1    inapplicable to all prisoners, sentenced prior to the effective date.").

2    Petitioner argues that it is an *Ex Post Facto* violation to apply amended
3    235(b)(3) to his case. The Ex Post Facto Clause of the United States Constitution prohibits
4    retroactive application of a law which increases the punishment for a crime that an individual
5    has already committed. Collins v. Youngblood, 497 U.S. 37, 42 (1990). A statute
6    retroactively increasing the penalties upon parole revocation would also be unconstitutional.
7    Johnson v. United States, 529 U.S. 694, 700-701 (2000). This same principle applies to an
8    administrative regulation, and in cases involving a change in parole policies or regulations,
9    the controlling inquiry "'[is] whether retroactive application of the change in [the] law
10   created a 'sufficient risk of increasing the measure of punishment attached to the covered
11   crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000) (citation omitted).

12   Petitioner's argument fails, as he was sentenced prior to the effective date of original
13   Section 235(b)(3), and therefore subject to 18 U.S.C. §4206(c), which permitted the USPC
14   to sentence him outside his parole guideline range. Thus, the amendment which occurred
15   subsequent to his sentence did not involve an increase in the penalties upon parole
16   revocation. Furthermore, the Ninth Circuit has rejected Petitioner's argument in Tripati, 872
17   at 330 ("Because 18 U.S.C. §4206(c) was inapplicable at the time of [the petitioner]'s
18   sentencing in 1984, any use of this statute pursuant to the amendment of section 235(b)(3)
19   of the SRA would not disadvantage him"); accord, Bledsoe v. United States, 384 F.3d 1232,
20   1238 (10th Cir. 2004) ("Finally, we join many federal courts of appeals in holding that the
21   1987 amendment as applied to prisoners who committed crimes prior to the [SRA]'s
22   enactment does not violate the Ex Post Facto clause" - citing six other Circuits).

23   Even if Petitioner were to establish that the un-amended Section 235(b)(3) applied to
24   him and required his release within his reparole guidelines, he can not establish prejudice,
25   as he had served approximately 111 months in custody upon his release in 1997, and his
26   reparole guideline range was 112-182 months. Thus, Petitioner received a release date more

favorable than would have been required under the un-amended Section 235(b)(3).[2]

Petitioner's assertion that the USPC lost authority over him in 1992, and that he was then subject to the jurisdiction of the district court is also without merit. Section 235(b)(4) of the SRA provided that all laws in effect on the day before the effective date of the Act would remain in effect as to individuals who had committed their crimes before that date, with the exception that, following the dissolution of the USPC, jurisdiction to revoke parole or amend conditions of release was transferred to the district court. Specifically, that Section provided:

> (4) Notwithstanding the other provisions of this subsection, all laws in effect on the day before the effective date of this Act pertaining to an individual who is–
> (A) released pursuant to a provision listed in paragraph (1); and
> (B)(I) subject to supervision on the day before the expiration of the five-year period following the effective date of this Act; or
>    (ii) released on a date set pursuant to paragraph (3);
> including laws pertaining to terms and conditions of release, revocation of release, provision of counsel, and payment of transportation costs, shall remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine, in accord with the Federal Rules of Criminal Procedure, whether release should be revoked or the conditions of release amended for violation of a condition of release.

Section 235(b)(4), SRA.

Thus, due to the various extensions of the life of the USPC, and the concomitant extensions of Section 235(b) of the SRA, Section 235(b)(4) only applies to persons who are subject to supervision on the day before the expiration of October 31, 2018. "Section 235(b)(3) does not require the [USPC] to take any action until the 'winding-up period.'" Strange v. U.S. Parole Commission, 875 F.2d 760, 761-2 (9th Cir. 1989); Lewis v. Martin, 880 F.2d 288, 290 (10th Cir. 1989). Thus, the USPC has not lost "authority" over Petitioner, and any transfer of the responsibilities relating to Petitioner's parole revocation or amendment of conditions would not be transferred to the district court until Petitioner's release or the date of the sunset

---

[2] Petitioner asserts to the contrary, that he actually served approximately 131 months, because he was "awarded credit for time served in the state." (Doc. 24, at 1.) Even is this were true, his sentence was still within the reparole guidelines, and was not contrary to the dictates of un-amended Section 253(b)(3).

of the USPC.

## CONCLUSION

For the foregoing reasons, this Court finds that the claim raised in Petitioner's habeas petition and Motion for Summary Judgment lack merit, and, therefore, this Court will recommend that Petitioner's Petition for Writ of Habeas Corpus and Motion for Summary Judgment be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), and "Motion for Summary Judgement Per Rule 56(c)" (Doc. 26), be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion to Rule and Allow Appeal (Doc. 29), be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 1st day of September, 2015.

_____
Michelle H. Burns
United States Magistrate Judge